**LAW OFFICES OF MICHAEL LABRUM**
**MICHAEL D. LABRUM, SBN 284403**
2625 Townsgate Road, Suite 330
Westlake Village, CA 91361
Michael@LabrumLaw.com
LabrumLaw.com
Phone: (805) 267-1171

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| EMILY KOHLBRENNER, an individual; AMAL SHAHIN, an individual; and MARK FREEDMAN, an individual; <br><br> Plaintiff, <br><br> vs. <br><br> AYLSTOCK, WITKIN, KREIS, & OVERHOLTZ, P.L.C.; DANIEL THORNBURGH, an individual; REAGAN THOMAS, an individual; and DOES 1-25, inclusive; <br><br> Defendants. | Case No.:    2:26-cv-5191 <br><br> **COMPLAINT FOR DAMAGES FOR:** <br> **1) PROFESSIONAL NEGLIGENCE;** <br> **2) BREACH OF FIDUCIARY DUTY;** <br> **3) BREACH OF CONTRACT;** <br> **4) BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING** <br><br> [Jury Trial Request] |

COMPLAINT FOR DAMAGES                                                PAGE **1** OF **21**

NOW COMES Plaintiffs EMILY KOHLBRENNER, AMAL SHAHIN, and MARK FREEDMAN (collectively referred to as "PLAINTIFFS") respectfully alleging and complaining of professional negligence and breach of fiduciary duties supported by the identified ultimate facts against Defendants AYLSTOCK, WITKIN, KREIS, & OVERHOLTZ, P.L.C., DANIEL THORNBURGH, REAGAN THOMAS, and DOES 1-25 (collectively referred to as "DEFENDANTS").

## INTRODUCTION

1.      This action arises from the professional negligence, breach of fiduciary duty, breach of contract, and breach of implied covenant of good faith and fair dealing of DEFENDANTS regarding the reckless and substandard handling of the underlying cryptocurrency theft claims of PLAINTIFFS. DEFENDANTS failed to provide careful, accurate, prudent, timely, skillful, diligent, and competent legal advice, counsel, opinion, and representation for PLAINTIFFS causing PLAINTIFFS to suffer significant and substantial monetary losses and damages. Furthermore, DEFENDANTS participated in unethical misconduct, made various materially false representations, and provided incompetent advice and counsel to PLAINTIFFS.

2.      PLAINTIFFS pray for leave to amend this Complaint, on a later date, regarding ultimate facts, causes of action, and/or damages which will be based upon findings related to continuing discovery and investigation. PLAINTIFFS are entitled to monetary relief for all damages caused by DEFENDANTS' actions and omissions.

## PARTIES AND JURISDICTION

3.      Plaintiff EMILY KOHLBRENNER ("EMILY" hereafter) is a resident of Los Angeles County, California.

4.      Plaintiff AMAL SHAHIN ("AMAL" hereafter) is a resident of Los Angeles County, California.

5.      Plaintiff MARK FREEDMAN ("MARK" hereafter) is a resident of Los Angeles County, California. All Plaintiffs will be collectively referred to as "PLAINTIFFS" herein.

6.      Defendant AYLSTOCK, WITKIN, KREIS, & OVERHOLTZ, P.L.C. ("AYLSTOCK FIRM" hereafter) is a Florida limited liability company with its principal place of business at 17 East Main Street, Suite 200, City of Pensacola, State of Florida.

7.      Defendant DANIEL THORNBURGH ("THORNBURGH" hereafter) is an individual licensed Florida attorney at law with a mailing address of Aylstock, Witkin, Kreis, & Overholtz, P.L.C., 17 E. Main Street, Suite 200, Pensacola, Florida 32502. PLAINTIFFS are informed, believes and thereon alleges that THORNBURGH is the actual or ostensible authorized partner, agent and/or employee of AYLSTOCK FIRM, and in doing the things herein alleged, were acting within the scope of such partnership, agency, or employment. PLAINTIFFS allege AYLSTOCK FIRM is vicariously liable for the acts and omissions of THORNBURGH under the principle of respondeat superior.

8.      Defendant REAGAN THOMAS ("THOMAS" hereafter) is an individual licensed Florida attorney at law with a mailing address of Aylstock, Witkin, Kreis, &

Overholtz, P.L.C., 17 E. Main Street, Suite 200, Pensacola, Florida 32502. PLAINTIFFS are informed, believes and thereon alleges that THOMAS is the actual or ostensible authorized partner, agent and/or employee of AYLSTOCK FIRM, and in doing the things herein alleged, were acting within the scope of such partnership, agency, or employment. PLAINTIFFS allege AYLSTOCK FIRM is vicariously liable for the acts and omissions of THOMAS under the principle of respondeat superior.

9.      The true names and capacities, whether individual, corporate, associate, or otherwise, of Does 1 through 25, inclusive, are unknown to PLAINTIFFS, who therefore sues the Doe Defendants by fictitious names. PLAINTIFFS will amend this Complaint to show their true names and capacities when they have been ascertained.

10.      PLAINTIFFS are informed, believe and thereon allege that each of the fictitiously named Defendants designated as Does 1 through 25, inclusive, were legally, equitably, and/or otherwise responsible for the acts, omissions, errors, tortious conduct, and/or occurrences herein alleged and that injuries and/or damages as herein alleged were proximately caused by these fictitiously named Defendants.

11.      All Defendants and Does 1 through 25 will be collectively referred to as "DEFENDANTS" hereafter.

/ / /

/ / /

/ / /

/ / /

## **JURSIDICTION AND VENUE**

12.     The Court possesses subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) because diversity of citizenship exists between Plaintiffs and Defendants and the amount in controversy exceeds $75,000.

13.     The Court is the proper venue pursuant to 28 U.S.C. § 1332(b)(2) because a substantial part of the events and omissions giving rise to the claims occurred within the judicial district, the legal services agreements were entered into in Los Angeles County, California, and Defendants intentionally directed legal services to California residents.

## **FACTUAL DISCUSSION**

14.     The allegations of paragraphs 1 through 13 are herein re-alleged and incorporated by reference.

15.     On or about January 10, 2025, PLAINTIFFS hired DEFENDANTS to provide legal representation, legal advice and counsel, and legal services for purposes of attempting to recover PLAINTIFFS' stolen cryptocurrencies. On March 4, 2025, he written legal services agreements were entered and executed in California between PLAINTIFFS and DEFENDANTS.

16.     Prior to entering into the legal services agreements, DEFENDANTS represented to PLAINTIFFS that DEFENDANTS possessed specialized experience, resources, investigative capabilities, and professional expertise relating to cryptocurrency theft recovery matters. PLAINTIFFS relied upon these representations in retaining

DEFENDANTS and foregoing other legal remedies, investigative options, and recovery opportunities.

17. On or about May 19, 2025, DEFENDANTS, without good cause, terminated the representation of EMILY and forfeited the recovery of her stolen cryptocurrencies. Thereafter and unbeknownst to MARK and AMAL, DEFENDANTS, without good cause and without notice, terminated the representation of MARK and AMAL and forfeited and abandoned the recovery of their stolen cryptocurrencies. DEFENDANTS abandonment of PLAINTIFFS was without good cause, in bad faith, and specifically without proper notice to MARK and AMAL thereby causing substantial harm and monetary losses to PLAINTIFFS due to the abandonment of the recovery process of the stolen cryptocurrencies.

18. DEFENDANTS failed to provide reasonable advance notice of withdrawal, failed to take reasonable steps to avoid foreseeable prejudice to PLAINTIFFS, failed to provide adequate status updates, failed to timely transfer investigative materials and case information, and failed to protect PLAINTIFFS' interests upon termination of representation. DEFENDANTS knew or reasonably should have known that cryptocurrency tracing and recovery efforts are highly time-sensitive because digital assets can be rapidly transferred, dissipated, concealed, converted, or moved through foreign exchanges and decentralized platforms, thereby substantially reducing the likelihood of recovery after delay or abandonment. DEFENDANTS failed to conduct adequate blockchain tracing, failed to preserve potential evidence, failed to pursue available investigative avenues, failed to coordinate properly with forensic specialists, failed to timely

communicate with exchanges or custodians, and failed to pursue available emergency or provisional remedies intended to preserve recoverable digital assets.

19.    PLAINTIFFS are informed, believe and allege that during the time DEFENDANTS provided legal representation, advice, counsel and legal services to PLAINTIFFS, DEFENDANTS accepted multiple substantially similar cryptocurrency recovery matters while failing to devote adequate attention, diligence, staffing, and resources to PLAINTIFFS' claims. DEFENDANTS failed to advise PLAINTIFFS that DEFENDANTS lacked the time and availability to devote the necessary time and effort to PLAINTIFFS cryptocurrency claims due to DEFENDANTS' heavy caseload.

20.    DEFENDANTS, individually and collectively, failed to exercise the degree of skill, prudence, diligence, loyalty, competence, and professional care commonly possessed and exercised by reasonably careful attorneys handling cryptocurrency asset recovery matters under similar circumstances, including but not limited to the following acts and omissions:

(a)    Failing to timely preserve and secure evidence relating to the theft and transfer of PLAINTIFFS' cryptocurrency assets;

(b)    Failing to promptly pursue expert tracing, identification, and recovery mechanisms commonly utilized in cryptocurrency theft investigations;

(c)    Failing to advise PLAINTIFFS regarding urgent dissipation risks associated with digital asset transfers and exchange movements;

COMPLAINT FOR DAMAGES                                                    PAGE **7** OF **21**

(d)    Failing to pursue or recommend appropriate emergency legal remedies, including preservation demands, subpoenas, injunctive relief, freezing relief, or third-party recovery mechanisms where appropriate;

(e)    Failing to adequately investigate identifiable wallets, exchanges, counterparties, and transactional pathways associated with the stolen assets;

(f)    Failing to coordinate with or retain competent forensic blockchain tracing professionals despite the technical nature of the matter;

(g)    Failing to adequately communicate material facts, risks, recovery limitations, and strategic options to PLAINTIFFS;

(h)    Providing inaccurate, misleading, incomplete, contradictory, or materially deficient legal advice and opinions regarding recoverability, strategy, timing, and available remedies;

(i)    Failing to diligently pursue viable recovery avenues during critical periods in which assets remained traceable and potentially recoverable;

(j)    Improperly withdrawing from representation without adequate notice, transition measures, client protection procedures, or reasonable opportunity for Plaintiffs to secure substitute counsel without prejudice;

(k)    Abandoning PLAINTIFFS' claims during active and time-sensitive recovery windows in which delay materially impaired potential recovery efforts;

(l)    Failing to act with undivided loyalty and in the best interests of PLAINTIFFS;

(m)     Failing to maintain adequate professional competence in handling cryptocurrency-related recovery matters while nevertheless undertaking representation in such matters.

21.     But for DEFENDANTS' erroneous advice, opinion, and/or counsel to PLAINTIFFS, PLAINTIFFS would have secured a better outcome and recovery in the underlying matter. If DEFENDANTS had properly and ethically advised and counseled PLAINTIFFS in the underlying matter, PLAINTIFFS would have secured a better outcome and recovery of the stolen cryptocurrencies. Viable recovery opportunities existed and were materially impaired. At all relevant times, PLAINTIFFS possessed viable and recoverable claims, remedies, and recovery opportunities relating to the stolen cryptocurrency assets. The stolen assets were capable of investigation, tracing, preservation, monitoring, and potential recovery through legal, forensic, investigative, and exchange-related processes commonly utilized in cryptocurrency theft matters. But for DEFENDANTS' failure to exercise reasonable professional care, competence, diligence, and loyalty, PLAINTIFFS are informed and believe that:

(a)     material evidence would have been preserved;

(b)     recovery avenues would have remained viable for longer periods of time;

(c)     identifiable exchanges, custodians, counterparties, and transactional pathways could have been timely pursued;

(d)     the likelihood of asset dissipation and concealment would have been materially reduced;

(e)     PLAINTIFFS would have had a substantially greater likelihood of achieving partial or complete recovery of assets;

(f)     PLAINTIFFS would have avoided substantial additional losses, delay, and expenses.

22.     At all relevant times, PLAINTIFFS possessed viable, actionable, and potentially recoverable claims relating to millions of dollars in stolen cryptocurrency assets, including substantial quantities of stablecoins (USDC, USDS), and significantly large amounts of USDT traceable through identifiable blockchain pathways, destination wallets, exchange-linked transfers, and associated forensic transaction records. Critically, multiple wallets receiving stolen assets remained identifiable and substantially dormant during material periods of DEFENDANTS' representation. Despite possessing this information, DEFENDANTS failed to act with the urgency, diligence, competence, and coordination reasonably required under the circumstances. DEFENDANTS delayed forensic tracing efforts, mishandled and commingled client tracing records, failed to timely pursue available recovery mechanisms, and abandoned representation during active recovery windows. As a direct and proximate result of DEFENDANTS actions and omissions, recoverable assets were exposed to further laundering, layering transactions, cross-chain bridge transfers, offshore exchange movements and obfuscation, and irreversible concealment.

23.     PLAINTIFFS are informed and believe that if DEFENDANTS acted competently and diligently, there existed a substantial probability of achieving materially greater recovery of assets and materially reducing ongoing dissipation and concealment.

DEFENDANTS destroyed, impaired, delayed, and materially diminished concrete and actionable recovery opportunities supported by identifiable blockchain evidence, traceable wallet infrastructure, and time-sensitive forensic recovery mechanisms. The resulting damages are substantial, foreseeable, and directly attributable to DEFENDANTS' breaches of duty, contractual misconduct, obstruction, and bad-faith interference with PLAINTIFFS' recovery efforts. As a direct and proximate result of Defendants' acts and omissions, PLAINTIFFS suffered loss of recovery opportunities, increased asset dissipation risks, impairment of legal rights, additional investigative and legal expenses, and substantial monetary damages.

24.    The forensic tracing records, communications, and investigative materials associated with the representation are expected to demonstrate substantial discrepancies between the representations made to PLAINTIFFS concerning recovery efforts, the actual status of forensic tracing activity, and the internal handling of client transaction records and investigative coordination.

25.    DEFENDANTS failed to exercise reasonable care, diligence, competence, professional ethics, and skill in researching, opining, and advising PLAINTIFFS regarding the underlying matter.

26.    Defendants abandoned a viable and time-sensitive cryptocurrency recovery effort, failed to take industry-standard preservation and recovery actions, misrepresented material facts and recovery prospects, and thereby materially impaired identifiable recovery opportunities.

27.     But for the DEFENDANTS' professional negligence and breach of fiduciary duties, PLAINTIFFS would have secured a better outcome and recovery in the underlying matter. However, DEFENDANTS failed to diligently, competently, skillfully, ethically, prudently, and carefully research, opine, advise, and counsel PLAINTIFFS regarding the underlying matter.

## FIRST CAUSE OF ACTION FOR PROFESSIONAL NEGLIGENCE

28.     The allegations of paragraphs 1 through 27 are herein re-alleged and incorporated by reference.

29.     DEFENDANTS were required to refrain from committing professional negligence by state statutes and case law. Further, DEFENDANTS owed PLAINTIFFS the duty of a professional to perform and use such skill, care, competence, prudence, and diligence as members of the local attorney profession commonly possess in contract and tort law.  The failure of DEFENDANTS to act competently, carefully, skillfully, ethically, prudently, and diligently in the legal researching, representation, handling, management, investigation, advising, opining, and counseling in the underlying matter was below the standard of care expected of local attorneys in similar circumstances.

30.     DEFENDANTS failed to perform adequate and sufficient legal research, formulate accurate opinions, and act ethically. DEFENDANTS provided PLAINTIFFS with erroneous, meritless, and baseless legal opinions, advice, and counsel.

31. DEFENDANTS breached duties owed by legal professionals to use reasonable care, competence, skill, prudence, and diligence when providing legal representation, advice, opinion, counsel, and services in the underlying matter.

32. There exists a proximate causal connection between the DEFENDANTS' actions and omissions and PLAINTIFFS' resulting harm, losses, and impairment of substantial rights and interests which entitle PLAINTIFFS to recover compensatory damages.

33. Careful, diligent, prudent, competent, ethical, and proper legal representation, opining, advice, and counsel would have more likely than not resulted in PLAINTIFF receiving a better outcome in the underlying matter. However, DEFENDANTS failed to diligently, competently, prudently, ethically, and carefully research, review, opine, advice, counsel, and advocate for PLAINTIFFS. But for DEFENDANTS' negligence, incompetence, misconduct, and carelessness, it is more likely than not that PLAINTIFFS would have received a better outcome and recovery in underlying matter.

34. As a direct and legal result of DEFENDANTS' legal malpractice, PLAINTIFFS suffered and continue to suffer consequential damages including, but not limited to, monetary damages, attorney fees and costs, inconvenience, costs incurred to prosecute this present case, further economic and non-economic damages, and damages associated with the loss, dissipation, diminished recoverability, and continued laundering exposure of identifiable digital assets and stablecoins presently in an amount believed to exceed $12.7 million mostly in Tether (USDT), including additional losses associated with

continued laundering and dissipation of traceable digital assets in Ethereum (ETH) and Bitcoin (BTC).

35.     DEFENDANTS' conduct was not merely negligent. PLAINTIFFS are informed and believe that DEFENDANTS knowingly failed to disclose material delays, mishandling of forensic tracing records, and deficiencies in recovery efforts while continuing to maintain the appearance of active and competent representation. DEFENDANTS further acted with conscious disregard of the foreseeable risk that delay, inaction, commingling of tracing materials, and obstruction of forensic clarification would materially impair recovery opportunities involving rapidly transferable digital assets. Such conduct was willful, oppressive, malicious, fraudulent, and carried out with conscious disregard for PLAINTIFFS' rights and interests.

## SECOND CAUSE OF ACTION FOR BREACH OF FIDUCIARY DUTY

36.     The allegations of paragraphs 1 through 35 are herein re-alleged and incorporated by reference.

37.     DEFENDANTS owed fiduciary duties to PLAINTIFFS including duties of loyalty, confidence, candor, transparency, disclosure, competence, honesty, trust, and to act with the utmost good faith in the best interests of the clients based on the relationship of attorney and client. By virtue of PLAINTIFFS placing confidence in the fidelity and integrity of DEFENDANTS, PLAINTIFF entrusted DEFENDANTS to provide ethical, accurate and material information, legal opinion, advice and counsel in the underlying matter.

PLAINTIFFS are informed, believe, and allege that DEFENDANTS breached the fiduciary duties owed to PLAINTIFF.

38.     Specifically, DEFENDANTS breached the fiduciary duties owed to PLAINTIFFS by failing to fully disclose all accurate and material facts and legal opinions regarding, *inter alia*, handling of the underlying matter. DEFENDANTS breached the fiduciary duties of trust, confidence, and best interests of PLAINTIFFS.

39.     Defendants breached those fiduciary duties by, among other things:

(a)     failing to disclose material risks and deficiencies in recovery efforts;

(b)     failing to provide candid and accurate assessments of recovery actions undertaken or not undertaken;

(c)     failing to adequately communicate material developments affecting recoverability of assets;

(d)     abandoning representation in a manner adverse to Plaintiffs' interests;

(e)     placing Plaintiffs in materially worse positions regarding recovery opportunities and legal rights.

40.     DEFENDANTS' breach of fiduciary duties was the proximate cause of the monetary losses and damages suffered by PLAINTIFFS.

41.     As a direct and legal result of DEFENDANTS' breach of fiduciary duties, PLAINTIFFS suffered and continues to suffer consequential damages identified *supra* including, but not limited to, loss of recoverable cryptocurrency assets, diminution of recovery opportunities, increased dissipation of assets, subsequent attorney fees and costs,

litigation expenses, consequential financial losses, cryptocurrency devaluation, loss of use of funds and investment opportunities, prejudgment interest, emotional distress and mental suffering, exemplary damages, monetary damages, inconvenience harm, costs incurred to prosecute this present case, and further economic and non-economic damages to be proven at trial.

## THIRD CAUSE OF ACTION FOR BREACH OF CONTRACT

42.      The allegations of paragraphs 1 through 41 are herein re-alleged and incorporated by reference.

43.      In January 2025, PLAINTIFFS and DEFENDANTS entered into written attorney-client contracts ("Agreements") thereby forming valid contracts between the parties.

44.      The Agreements included essential terms and conditions establishing duties and obligations owed by DEFENDANTS to PLAINTIFFS in connection with the legal services provided.

45.      PLAINTIFFS performed all obligations required of PLAINTIFFS under the Agreements.

46.      Pursuant to the Agreements, DEFENDANTS owed PLAINTIFFS contractual duties arising from the terms of the Agreements.

47.      DEFENDANTS materially breach the Agreements by failing to perform obligations required by the Agreements, including breach specific provisions of the Agreements identified in this Complaint.

48.      As a direct and proximate result of DEFENDANTS' breach of the Agreements, PLAINTIFFS suffered damages.

49.      PLAINTIFFS request judgment against DEFENDANTS for damages identified *supra* resulting from the breach as well as any other and further relief the Court deems just and proper.

## FOURTH CAUSE OF ACTION FOR BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

50.      The allegations of paragraphs 1 through 49 are herein re-alleged and incorporated by reference.

51.      PLAINTIFFS and DEFENDANTS entered into a written contract establishing an attorney-client relationship on or about March 4, 2025.

52.      The contract between PLAINTIFFS and DEFENDANTS included an implied covenant of good faith and fair dealing. DEFENDANTS terminated the contract in bad faith and intentionally obstructed and interfered with contractual recovery expectations. DEFENDANTS induced PLAINTIFFs to rely upon an active and ongoing professional relationship beginning January 10, 2025, accepted the benefits of that relationship,

commenced substantive work, and then frustrated the very contractual purposes for which PLAINTIFFS retained them.

53.    Under the implied covenant of good faith and fair dealing, DEFENDANTS owed PLAINTIFFS a duty to discharge contractual obligations fairly and in good faith and to refrain from conduct that would unfairly frustrate PLAINTIFFS' reasonable expectations or undermine the purpose of the contract.

54.    PLAINTIFFS performed all obligations required under the contract.

55.    DEFENDANTS expressly and impliedly agreed to undertake and pursue active recovery efforts on behalf of PLAINTIFFS relating to stolen cryptocurrency assets, including substantial quantities of stablecoins and USDT traceable through identifiable blockchain transactions and wallet infrastructure. Beginning no later than January 10, 2025, DEFENDANTS induced PLAINTIFFS to enter and continue the attorney-client relationship by representing that DEFENDANTS would investigate and pursue recovery remedies, coordinate forensic tracing efforts, analyze blockchain transaction pathways, communicate and cooperate with forensic specialists, preserve and protect recovery opportunities, act diligently and urgently in light of ongoing laundering risks, and pursue available legal and investigative mechanisms directed toward asset recovery. PLAINTIFFS relied upon these representations in retaining DEFENDANTS to provide extensive confidential financial records and transaction data, refrain from pursuing alternative counsel and recovery channels, and to continue to cooperate with DEFENDANTS throughout the representation. DEFENDANTS accepted the benefits of the representation and undertook

substantive work, including collection of transaction HASH IDs, review of blockchain transfer information, communications regarding tracing and recovery strategy, coordination with forensic vendor Coinstructive, Inc., and management of recovery-related investigative materials. Despite these undertakings and representations, DEFENDANTS materially breached the Agreement by failing to perform the promised recovery efforts in a competent, diligent, coordinated, timely, and good-faith manner. *Inter alia*, DEFENDANTS failed to timely initiate and coordinate forensic tracing activity, failed to properly manage and segregate client tracing records, commingled and mislabeled transaction materials belonging to separate clients, failed to timely pursue available recovery mechanisms, obstructed clarifying communications with forensic investigators, failed to disclose material delays and deficiencies affecting recovery efforts, failed to protect identifiable recovery opportunities involving dormant and traceable wallets, and abandoned the representation during active recovery periods in which the stolen assets remained exposed to additional laundering and concealment risks. The breaches described herein were material. The very essence of the Agreement was the prompt and competent pursuit of cryptocurrency recovery efforts before the assets could be irretrievably dissipated or concealed. By failing to perform the promised recovery efforts and by materially impairing the recovery process itself, DEFENDANTS deprived PLAINTIFFS of the principal contractual benefits for which they retained counsel. As a direct and proximate result of DEFENDANTS' breaches, PLAINTIFFS suffered substantial damages, including impairment and loss of recovery opportunities, increased exposure of assets to laundering and concealment, additional forensic and legal expenses;

delay-related losses, and substantial consequential damages associated with the diminished likelihood of recovering millions of dollars in stolen digital assets.

56.     As identified and detailed *supra*, DEFENDANTS' acts and omissions constituted breach of the implied covenant, including but not limited to, failure to communicate, abandonment of representation, failure to perform services, conduct that undermined the purposes of the representation and other conduct that unfairly frustrated PLAINTIFFS' reasonable expectations.

57.     DEFENDANTS' breach of implied covenant of good faith and fair dealing was the direct and proximate cause of PLAINTIFFS' damages as identified and detailed *supra*.

## PRAYER FOR RELIEF

**WHEREFORE**, PLAINTIFFS respectfully request judgment by a jury trial on the legal malpractice, breach of fiduciary duty, breach of contract, and breach of implied covenant of good faith and fair dealing causes of action and for recovery of all damages claimed herein including all economic and non-economic damages. Specifically, PLAINTIFFS pray for judgment against DEFENDANTS, and each of them, as follows:

1.  For compensatory damages according to proof at trial, including damages associated with the loss, dissipation, diminished recoverability, and continued laundering exposure of identifiable digital assets and stablecoins presently in an amount believed to exceed $12.7 million mostly in Tether (USDT), including

additional losses associated with continued laundering and dissipation of traceable digital assets in Ethereum (ETH) and Bitcoin (BTC).

2. For all special, general, inconvenience, exemplary, and consequential damages, according to proof;

3. For pre-judgment and post-judgment interest at the legal rate;

4. For costs incurred for this lawsuit as well as for the underlying matter; and

5. For other and further relief as this Court may deem just and proper.

Dated: May 13, 2026                     **LAW OFFICES OF MICHAEL LABRUM**

_____
Michael Labrum, Esq.
Attorneys for Plaintiffs